**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: February 04 2010

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-37219 |
| | ) | |
| Sandra Renee Tippin, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF OPINION AND ORDER

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtor's Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1) and (3) [Doc. # 27] and Debtor's response [Doc. # 31]. The court held a hearing on the motion that Debtor, her counsel and counsel for the UST attended in person and at which the parties presented testimony and other evidence in support of their respective positions. The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O).

Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtor's Chapter 7 case unless she converts it to Chapter 13.

## BACKGROUND

Debtor is single and has one daughter who is eighteen years old and who she claims as a dependent. Her daughter is a freshman at the College for Creative Studies in Detroit, Michigan. Debtor also attends college at the University of Toledo and anticipates graduating with her bachelor's degree in electrical engineering in May 2010.

Debtor has worked for the past two years as a controls engineer for KUKA Toledo Production Operations LLC, a supplier of parts for the assembly of Jeeps at the Chrysler plant in Toledo. In 2008, she earned $126,277. In 2009, she earned $82,000. This loss of income was the result of a loss of overtime and a six-week layoff during June and July. Debtor was also laid off during the first week of January 2010 and has been notified of another scheduled six-week layoff during July and August 2010.

On October 16, 2009, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. Although her debts include approximately $18,000 in business loans incurred during 2006 when she was self-employed, she testified, and her petition indicates, that her debts are primarily consumer debts. Debtor's Schedule D shows total secured debt in the amount of $149,872. Her secured debts include $111,694 secured by first and second mortgages on her home, which she values at $90,000, as well as $10,412 secured by a 2004 Dodge Ram that is driven by Debtor, $12,765 secured by a 2007 Liberty Sport that was driven by her daughter, and $15,000 secured by a time share in Fort Lauderdale, Florida, that Debtor values at $18,000. Debtor has stated an intention to surrender the Fort Lauderdale time share and, since filing, has already surrendered the Liberty Sport. Debtor's other assets are modest.

Her bankruptcy schedules show unsecured priority debt for city income taxes owed in the amount of $4,602 and total unsecured nonpriority debt in the amount of $108,381. In addition to her business debt, Debtor's unsecured nonpriority debt includes student loan debt used to finance her own education in the amount of $18,646 and student loan debt as a result of a Parent Plus Loan used to finance her daughter's first year of college in the amount of $23,000. The remainder consists primarily of credit card debt. According to Debtor, her daughter was unable to obtain a student loan in her own name because of Debtor's level of income.

Debtor's Schedule I shows gross monthly income of $6,223, which annualized is $74,676. Although she earned $82,000 in 2009, that figure includes overtime pay that she was still receiving during the early months of the year but which, as indicated above, she is no longer receiving. Her Schedule I shows net monthly income after payroll deductions in the amount of $4,511. Debtor also received a $5,000 federal income tax refund in 2009. However, she had a second dependent child living with her during 2008, which

2

she testified was the reason for the large refund. She received no refund in 2006 and 2007.

Debtor's Schedule J shows total monthly expenses of $4,662, leaving a deficit of $151. Her expenses include $525 paid on behalf of her daughter for housing while away at school, $142 for her daughter's car insurance, and a $373 car payment for the 2007 Liberty Sport that was being driven by her daughter. Although Debtor has surrendered the Liberty Sport, her daughter is now driving a car purchased for her by her grandparents and Debtor is still paying her car insurance. Other of her daughter's expenses that Debtor pays include an electric utility expense of $80 per month and a parking expense. Debtor's monthly expenses also include, among other things, a telephone expense of $140 and a cable/internet expense of $110.

Debtor's Form B22A calculating the means test shows that her annualized current monthly income at the time of filing this case was $73,47168. The median income for a family the size of Debtor's family in Ohio is $52,922. However, no presumption of abuse arose under § 707(b)(2) after the calculation of allowed deductions. Instead, the UST is proceeding on his timely filed motion to dismiss for abuse solely under § 707(b)(3) based on the totality of the circumstances.

## LAW AND ANALYSIS

Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Under § 707(b)(3), in determining whether granting relief would be an abuse, the court is required to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). This provision was added by Congress in 2005 as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).

In this case, the UST does not argue that Debtor filed her petition in bad faith but instead contends

3

that the totality of the circumstances show that Debtor is not needy and that she has the ability to repay a meaningful portion of her unsecured debt. A debtor is "needy" when "[her] financial predicament warrants the discharge of [her] debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone is sufficient to warrant dismissal under some circumstances. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *In re Bender*, 373 B.R. 25, 30 (Bankr. E.D. Mich. 2007); *In re Burge,* 377 B.R. 573, 577 (Bankr. N.D. Ohio 2007); *see Krohn*, 886 F.2d at 126.

In arguing that Debtor has the ability to pay a meaningful portion of her unsecured debt, the UST asserts that funds used to pay her daughter's car insurance, housing and utility expenses while she is away at school are not necessary and can be eliminated without depriving Debtor or her dependents of adequate food, clothing, shelter or other necessities. The UST also asserts that her income tax refunds and funds that were used to pay for the surrendered Liberty Sport could be used to pay her unsecured creditors. While it does not appear that Debtor will be entitled in the future to the substantial income tax refund that she received in 2009, for the reasons that follow, the court agrees that Debtor can make other funds available to pay a meaningful portion of her unsecured debt.

Initially, the court notes that in evaluating the totality of Debtor's financial circumstances, it has taken into consideration that Debtor has made honest and meaningful attempts to decrease her expenses by surrendering both her second vehicle and her Florida timeshare. That is exactly the kind of belt-tightening that is required of a Chapter 7 debtor. *See In re Bender*, 373 B.R. at 30 (stating that one factor to consider in determining whether a debtor has the ability to repay debts out of future earnings is whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities). Nevertheless, while Debtor did not include the timeshare expense in her Schedule J budget, she did include the $373 car payment expense for the surrendered vehicle. As this is no longer an expense that she will be paying, those funds will be available to pay her unsecured creditors.

Debtor is also paying over $740 per month in living expenses and car insurance for her adult daughter who is away at college. While a parent's desire to assist a child who is pursuing a college degree is laudable, as this court has previously held, a debtor is not free to do so at the expense of her unsecured

4

creditors. *In re Pfahler*, No. 07-30044, 2007 WL 2156401, *2, 2007 Bankr. LEXIS 2526, *6 (Bankr. N.D. Ohio, July 26, 2007); *See In re Baker*, 400 B.R. 594, 598 (Bankr. N.D. Ohio 2009) ("The majority of courts has held that a debtor may not pay for his or her child's expenses of attending college when the unsecured creditors are not paid in full."); *U.S. Trustee v. Harrelson*, 323 B.R. 176, 179 (Bankr. W.D. Va. 2005) (finding debtors' budget that included their adult children's college expenses to be unreasonable as they were under no duty to pay for such expenses); *In re Staub,* 256 B.R. 567, 571 (Bankr. M.D. Pa. 2000) (agreeing that "educational expenses for adult children are discretionary, and are not expenses that should be foisted upon a debtor's pre-petition creditors"); *In re Studdard*, 159 B.R. 852, 856 (Bankr. E.D. Ark. 1993) (holding that debtors who have the ability to repay their debts could not continue to fund their children's college tuition and living expenses to the detriment of their creditors). The court does not find Debtor's argument persuasive that these expenses should be permitted since she would be paying the same amount if her daughter was living at home and going to school. Even assuming the expenses would be the same, which the court does not believe would be the case, they are still discretionary expenses being paid for an adult child, which, absent special circumstances not in evidence here, cannot be imposed upon Debtor's unsecured creditors. With these adjustments to Debtor's monthly expenses, which will not deprive her of adequate food, clothing, shelter or other necessities, her income after adjusted expenses is approximately $960 per month.

Although Debtor has only worked for her current employer for two years and her income decreased materially in 2009, there is no indication that her continued employment is in jeopardy. And while Debtor experienced a six-week layoff during the past year and has been notified that she will be laid off for another six weeks during the summer of 2010, she receives unemployment compensation during the layoffs. As an individual with relatively stable and regular income, she is eligible for Chapter 13 relief should she choose to seek such relief as her debts are less than the statutory eligibility limits. *See* 11 U.S.C. §§ 109(e), 101(30). Debtor has the ability to provide in a Chapter 13 plan for payments that take into consideration the six-week summer layoff that has already been noticed. If Debtor applied her monthly income after adjusted expenses of $960 to fund a Chapter 13 plan over the sixty-month maximum plan duration for above-median income debtors, *see* 11 U.S.C. § 1322(d)(1), she would have $48,966 available after payment of the Chapter 13 Trustee's administrative expenses and her priority unsecured debt to pay her remaining unsecured debt. Under this scenario, nonpriority, unsecured creditors could potentially receive a dividend of approximately 45 percent. *See In re Behlke*, 338 F.3d at 437 (finding *substantial* abuse where debtors had the ability to pay at least a 14% dividend to their unsecured creditors).

Nevertheless, in arguing that dismissal is not appropriate, Debtor asks the court to consider the fact that the student loans that she has incurred for her own education will be going into payment status since she is graduating in May 2010. Thus, Debtor argues, in effect, that funds that would otherwise be available to pay her unsecured creditors must be used to pay her student loan creditor. While student loan debts are generally non-dischargeable, the majority of courts have found their nondischargeability, without more, is not a basis to permit a debtor to treat the student loan creditor more favorably than other unsecured creditors. *See, e.g., Groves v. LaBarge (In re Groves)*, 39 F.3d 212, 215-16 (8th Cir. 1994); *Bentley v. Boyajian (In re Bentley),* 266 B.R. 229, 239-42 (B.A.P. 1st Cir. 2001); *In re Tucker*, 150 B.R. 203, 205 (Bankr. N.D. Ohio 1992); *In re Reimer*, No. 07-32787, 2008 WL 495537, *2-3, 2008 Bankr. LEXIS 517, *6-9 (Bankr. N.D. Ohio Feb. 21, 2008); *cf. XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1453 (6th Cir. 1994) (agreeing that courts must act "very cautiously" in making an equitable determination "in favor of one group of potential creditors at the expense of other creditors, for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws"). In any event, payment of Debtor's student loan creditors can also be provided for in a Chapter 13 plan.

The availability of debtors' remedies under state law and the relief that might be afforded through private negotiations with creditors are other factors the Sixth Circuit has identified as relevant in deciding whether it would be an abuse to grant a Chapter 7 discharge in a particular case. Neither party has addressed these factors in this case. As the United States Trustee bears the burden of proof on the motion, *In re Wright*, 364 B.R. 640, 643 (Bankr. N. D. Ohio 2007), the court will assume that there are no such state law remedies or private negotiations that will assist in resolving Debtor's financial problems.

In sum, the court finds that granting Debtor relief under Chapter 7 of the Bankruptcy Code would be an abuse of the provisions of that chapter given the following financial circumstances: (1) Debtor has generally stable, regular income and above median income status; (2) she is eligible for Chapter 13 relief if she chooses to seek such relief; (3) she has the ability to further reduce discretionary expenses being paid on behalf of her daughter without depriving Debtor or a dependent of any necessity; (4) and she has the ability to repay a meaningful portion of her unsecured debt.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Debtor is allowed twenty eight (28) days from the date of this order to file a motion to convert to a Chapter 13 case, absent which the Motion of the United States Trustee to Dismiss Pursuant to 11 U.S.C. §§ 707(b)(1) & (3) [Doc. #27] will be granted, and this case will be dismissed, by separate order of the court.